FILED

2019 OCT 22 PM 1: 10

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **IN THE MATTER OF** | **Special Proceedings Case No.: SP0058-18** |
| **WESTERN SALES TRADING CO.,** | **DECISION AND ORDER** |
| PETITIONER, | |
| **GENPRO INTERNATIONAL INC.,** | 1. GENPRO's Motion to Determine Amount of Turnover Order and to Approve Bond |
| RESPONDENT, | |
| **AND** | 2. Western Sales' Motion to Hold GENPRO in Contempt |
| **FPD FOOD INTERNATIONAL INC. aka 7D Food International, Inc.,** | 3. Western Sales' Motion for Attorney Fees |
| REAL PARTY IN INTEREST. | |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on Respondent GENPRO International, Inc.'s ("GENPRO") Motion to Determine Amount of Turnover Order and to Approve Bond, Western Sales' Motion to Hold GENPRO in Contempt, and Western Sales' Motion for Attorney Fees. Attorneys Gary Gumataotao and Bill Mann represent GENPRO. Attorney Joseph Razzano represents Petitioner Western Sales Trading Co. ("Western Sales"). Having considered the parties' arguments and the applicable law, the Court now issues this Decision and Order.

ORIGINAL

# BACKGROUND

GENPRO is in the business of importing products primarily from the Philippines for resale to retail distributors on Guam. Bui Decl. at 1 (June 12, 2018). One of the products GENPRO imports is a packaged dried mango product known at "7D Dried Mangoes," which GENPRO purchases from FPD Food in the Philippines. *Id.* at 2. The Court has previously determined that FPD Food is the successor corporation to corporation called 7D Food. Dec. & Ord. at 11-14 (Sep. 26, 2019). Western Sales is also in the business of importing dried mango products from the Philippines, and competes directly with GENPRO. Opp'n to Pet. at 3 (June 12, 2018).

The facts of this Special Proceedings case arise from the Superior Court of Guam civil case *Western Sales Trading Company, Inc. v. 7D Food International, Inc.,* CV1527-11. On March 14, 2013, the Superior Court of Guam issued a Judgment against 7D Food in favor of Western Sales for a total amount of $972,264.54. CV1527-11, Judgment (Mar. 14, 2013). Western Sales has attempted to collect on the judgment owed by 7D Food, including filing writs of execution and notices of levy on bank accounts at numerous banks. First Razzano Declaration ¶ 4 (Apr. 10, 2018). Western Sales has been unable to collect on the judgment. *Id.*

Being unable to collect on its judgment against 7D Food, Western Sales initiated the current proceedings, seeking an order pursuant to Public Law 34-77 ("PL34-77") requiring GENPRO to turnover assets in its possession which were obtained from 7D Food/FPD Food. On May 11, 2018, the Court issued an Amended Order to Show Cause which required GENPRO to either turnover to Western Sales sufficient assets of 7D Food/FPD Food to satisfy the CV1527-11 Judgment or to appear on June 14, 2018, to show cause why a turnover order should not be

ORIGINAL

required. Amended OSC (May 11, 2018). The parties appeared on June 14, 2018, and agreed to continue the Order to Show Cause Hearing until August 2, 2018, on which date the Court heard the parties' arguments and took the matter under advisement. The matter was thereafter held in abeyance because the Guam Attorney General's Office had not been properly served, despite GENPRO's challenge to the validity of PL 34-77 which requires by statute that the Attorney General's Office be given an opportunity to defend the validity of the law. Order (Nov. 21, 2018). The Attorney General's Office was served but thereafter failed to respond, and the Court took the matter under advisement on December 27, 2018.

On April 26, 2019, the Court issued a Decision and Order granting Western Sales' Petition for Order to Show Cause Re: Turnover of Assets. The Court found that FPD Food is a successor corporation to 7D Food, with the former created to avoid the debts of the latter. Pursuant to PL 34-77, the Court granted Western Sales' Petition and scheduled an Order to Show Cause Hearing for May 30, 2019. On May 17, 2019, Western Sales filed its Motion for Attorney Fees. On May 28, 2019, GENPRO filed its Motion to determine Amount of Turnover Order and to Approve Bond. On June 14, 2019, Western Sales filed a Motion to find GENPRO in contempt of the Order to Show Cause issued on May 11, 2018.

## DISCUSSION

### I. Western Sales' motion to find GENPRO in contempt.

On June 5, 2019, Western Sales tendered to GENPRO a check in the amount of $77,496.50 and a request that GENPRO move forward in complying with the Turnover Order. Razzano Decl. Exh. A (June 14, 2019). On June 6, 2019, GENPRO rejected the payment and

ORIGINAL

refused to turnover property. *Id.* Exh. B. Western Sales argues that GENPRO's refusal to turnover assets at this time is contemptuous.

Under Guam law, a party can be held in contempt of court when the movant shows by clear and convincing evidence that there is (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) a willful failure to comply with the order. *Rodriguez v. Rodriguez*, 2003 Guam 8 ¶ 15.

### a. *The operation of PL 34-77.*

Western Sales' Petition is brought pursuant to PL 34-77, which allows a judgment creditor to seek the turnover of assets formerly held by a judgment debtor, regardless of whether the assets are currently held by the judgment debtor. PL34-77 has been codified in the Guam Annotated Code as 7 GCA § 23401 *et seq.* The current holder of the property is to be given notice and an opportunity to be heard and produce evidence of its cost in acquiring the property. *Id.* Thereafter, the court shall issue a turnover order pertaining to any such purchased assets with a lien in favor of the party who originally purchased it from the judgment debtor for the purchase price of the turnover property. *Id.* at (b)(3). If the judgment creditor then sells such property, the proceeds of the sale shall be used to satisfy the lien, with all additional proceeds of the sale being used toward satisfying the judgment debtor's obligation. *Id.* at (b)(4).

### b. *There has not been a valid turnover order.*

On May 21, 2018, GENPRO was served with a Petition for Order to Show Cause Re: Turnover of Assets. GENPRO opposed the Petition. On June 14, 2018, the Court issued an Amended Order to Show Cause, ordering GENPRO to either immediately turnover assets of FPD Food/7D Food in its possession to satisfy the judgment from CV1527-11 or appear to show

cause why a turnover order should not be issued. GENPRO chose the latter option and appeared on May 11, 2018. The Court provided GENPRO with an opportunity to file a written opposition to the Order to Show Cause, which GENPRO filed on June 12, 2018. On April 26, 2019, the Court issued a Decision and Order rejecting GENPRO's arguments.

Western Sales argues that the April 26, 2019 Decision and Order had the effect of immediately requiring GENPRO to turnover all assets required by FPD Food/7D Food, as the Court's rejection of GENPRO's arguments put into effect the Amended Order to Show Cause issued May 11, 2018. The Court disagrees. The Amended Order to Show Cause was issued before GENPRO was provided an opportunity to produce evidence of its cost in acquiring the assets. It therefore cannot operate as a turnover order because PL34-77 provides that the Court may issue a turnover order only after GENPRO is afforded an opportunity to provide such evidence. The April 26 Decision did not order GENPRO to immediately turnover assets, but instead set this matter for an Order to Show Cause hearing which was held on May 30, 2019. Because there has been no valid turnover order, GENPRO cannot be held in contempt at this time.

**II.     A turnover order is appropriate at this time and GENPRO is entitled to a lien for the purchase price of the inventory obtained from 7D Food/FPD Food.**

Having found that GENPRO is in possession of goods obtained from 7D Food/FPD Food, a judgment creditor of Western Sales, the Court must now issue a turnover order pertaining to any such purchased assets with a lien in favor of GENPRO for the purchase price of the turned over property. 7 GCA § 23404(b)(3). The Turnover Order applies to GENPRO's inventory as of May 4, 2019, as this is the day immediately following the day when GENPRO's president Tri A. Bui ("Bui") ordered his employees to stop all sales of the dried mango product.

ORIGINAL

Bui Decl. at ¶ 5 (May 28, 2019). The Court must therefore determine the amount GENPRO paid for the inventory.

Bui submitted a Declaration on May 28, 2019, in which he provided an accounting of GENPRO's inventory to aid the Court in determining the amount of the Turnover Order. *Id.* at Exh. 2, 3. Bui stated that the total cost (purchase price plus shipping) to GENPRO for the inventory purchased from 7D Food/FPD Food is $77,496.50. *Id.* at Exh. 3. Bui further provided that the market value of the product is $108,203.74 based upon the average price which GENPRO sells the product to its retail customers.

Western Sales does not dispute that $77,496.50 is the amount GENPRO paid for the assets which are to be turned over. The Court hereby holds that GENPRO is entitled to a lien in that amount.

**III.     GENPRO's Motion for bond approval.**

GENPRO requests permission to post a bond in lieu of turning over the inventory at issue. GENPRO intends to appeal this matter, but has been unable to do so due to the lack of a turnover order. Section 3108 of Title 7 provides that "[a]ppellate review to the Supreme Court shall be available only upon the rendition of final judgment in the Superior Court . . . " The Guam Supreme Court has held that a judgment is final only if it leaves no issue for future consideration, and leaves nothing to be done except to enforce the judgment by execution. *Department of Revenue and Taxation v. Civil Service Commission*, 2007 Guam 17 ¶¶ 15-16.

PL34-77 does not provide that a party subject to a turnover order may satisfy a turnover order by tendering a bond. Guam Rule of Civil Procedure 62(d) states that when an appeal is taken, the appellant may obtain a stay by posting a supersedeas bond. The bond may be given at

or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. *Id.* The stay is effective when the supersedeas bond is approved by the court. *Id.* Here, GENPRO has yet to file an appeal in this matter and the approval of a bond is therefore premature.

## IV. Western Sales' Motion for Attorney Fees.

Western Sales moves the Court for an order awarding all of its costs and attorney fees incurred in collecting and enforcing its judgment, in the amount of $41,894.69. PL34-77 provides that "[a]ny judgment creditor who uses this Article to collect or enforce its judgment is entitled to all costs and attorneys' fees expended in the collection effort." 7 GCA § 23404(c). GENPRO argues that the attorney fees provision either (1) renders the entire statute unconstitutional in violation of the Takings Clause of the Fifth Amendment to the United States Constitution and the Organic Act of Guam, or (2) must be severed from the statute. Opp'n at 2.

*a. The law of the case doctrine does not prevent the Court from considering whether the attorney fees provision of Section 23404 is inorganic.*

In its April 26 Decision and Order, the Court held that "PL34-77 does not violate the Takings Clause of the Organic Act of Fifth Amendment." Dec. and Order at 7. Western Sales argues that the Court is therefore barred from considering whether the attorney fees provision is unconstitutional or inorganic.

Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court. *People v. Orallo*, 2006 Guam 8 ¶ 5. "Rulings made in a proceeding are considered the law of the case and are binding in later proceedings." *People v. Katzuta*, 2016 Guam 25.

The Court's holding in the April 26 Decision and Order did not address the issue of whether the attorney fees provision of PL34-77 is unconstitutional or inorganic. GENPRO's challenge was based solely on whether *turnover orders* pursuant to PL34-77 violated the due process requirements, Takings Clause, or Contracts Clause of the Organic Act. Western Sales had not moved for an award of attorney fees at the time and GENPRO therefore had no reason to contest the validity of the attorney fee provision. The law of the case doctrine only precludes the Court from reconsidering an issue which has already been decided. Because the attorney fees provision of PL34-77 has not been before the Court, the law of the case doctrine does not apply.

b. *The attorney fees provision is unconstitutional and inorganic.*

The Takings Clause of the Organic Act provides that "[p]rivate property shall not be taken for public use without just compensation." 48 U.S.C. § 1421b(f). The Takings Clause of the Organic Act is nearly identical to the Takings Clause of the Fifth Amendment of the U.S. Constitution, which has been incorporated to apply to Guam through 48 U.S.C.A, § 1421(b)(u). *See Gov't of Guam v. 162.40 Square Meters of Land More or Less, Situated in Municipality of Agana*, 2011 Guam 17 ¶ 15. As the two clauses are nearly identical and both apply on Guam, the Court will therefore look to the more developed case law interpreting the Takings Clause of the Fifth Amendment for guidance.

A party having his property taken from him "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." *Olson v. United States*, 292 U.S. 246 (1934). In holding that PL34-77 is organic, the Court held that GENPRO would be justly compensated for the turnover property because it would be granted a lien on the property equal to the costs of acquiring such property. April 26

ORIGINAL

Decision at 9. GENPRO argues that requiring it to pay Western Sales' attorney fees would reduce the amount of mandated just compensation to which GENPRO is entitled. Opp'n at 3-4. The Court agrees. The lien on the turned over inventory is the saving grace of PL34-77 because it ensures that parties such as GENPRO will receive just compensation. The inclusion of an attorney fees provision in PL34-77 essentially guarantees that a party subject to a turnover order would never be fully compensated. An allowance of attorney fees would partially offset the amount the turning over party is entitled to under the lien, leading to a situation where such parties are necessarily provided less than their costs in acquiring the property taken. In the case at hand, GENPRO is turning over inventory for which it paid $77,496.50 and is entitled to a lien in that amount. Allowing Western Sales to recover the requested $41,894.69 in attorney fees and costs would mean that GENPRO would effectively receive $35,601.81 in return for its inventory for which it paid $77,496.50 (assuming Western Sales successfully sold the entire inventory for market value and satisfied the lien). Such a result would not satisfy the Takings Clause's requirement of just compensation.

c. *Whether the attorney fees provision can be severed.*

A severability provision is found in Section 3 of PL34-77:

> If any provision of this Act or its application to any person or circumstance is found to be invalid, or contrary to law, such invalidity shall not affect other provisions or applications of this Act that can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

While the presence of a severability clause creates a presumption that the validity of a statute does not depend on the survival of its constitutionally offensive provisions, that presumption is not conclusive. *In re Request of Governor Felix P. Camacho*, 2004 Guam 10 ¶ 54. "Under the traditional test for severability, fashioned more than seventy years ago: 'Unless it

ORIGINAL

is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" *Id.* (quoting *Champlin Refining Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932)).

The stated goal of PL34-77 is to protect businesses on Guam from recalcitrant persons or entities that refuse to satisfy judgments while continuing to avail themselves of the Guam market. PL34-77, Sect. 1. By allowing turnover orders such as the one issued against GENPRO, PL34-77 protects Guam businesses and dissuades companies such as 7D Food/FPD Food from avoiding judgments. PL34-77 will continue to meet this goal despite the absence of an attorney fees provision. For this reason, the Court holds that the unconstitutional and inorganic attorney fees provision is severed from the remaining sections of PL34-77.

## CONCLUSION

For the foregoing reasons, GENPRO is hereby ordered to turnover to Western Sales all of its assets which were obtained from either FPD Food or 7D Food. The Court grants a lien to GENPRO in the amount of $77,496.50. GENPRO's Motion to Approve Bond is **DENIED.** Western Sales' Motion to Hold GENPRO in Contempt is **DENIED.** Western Sales' Motion for Attorney Fees is **DENIED.**

SO ORDERED 10/22/19 .

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
- Gumataotao Pole; Atty Mann
- Civille & Tang
Date: 10/22/19 Time: 9:35 pm

**Linda M. Perez**
Deputy Clerk, Superior Court of Guam

The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SP0058-18, *Western Sales v. GENPRO*     ORIGINAL     Page **10** of **10**